UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
CASINE LORENZO,   **FIRST AMENDED COMPLAINT**

   **14 CV 9865 (ALC)**
   **ECF Case**

        Plaintiff,

   vs.

The CITY OF NEW YORK,
DETECTIVE MIGUEL HERNANDEZ, Shield 7220,
SERGEANT CRYSTAL COLLINS, Shield 3435,
and UNDERCOVER POLICE OFFICER C0206,
in their individual and official capacities,

   **JURY TRIAL DEMANDED**

        Defendants.
----------------------------------------------------------x

Plaintiff Casine Lorenzo, by his attorney, Cyrus Joubin, complaining of the Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. This civil rights action arises from the false arrest and malicious prosecution of Casine Lorenzo ("Plaintiff") after NYPD Detectives arrested his friend in a "buy-and-bust" operation then decided to unlawfully arrest, strip search, and charge Plaintiff under the fabricated pretext that he was helping his friend sell drugs. Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for false arrest and imprisonment, illegal strip search, malicious prosecution, and failure to intervene, and a *Monell* claim against the City of New York for the same constitutional violations. Plaintiff seeks compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

1

## JURISDICTION

2.   This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

3.   Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

4.   Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

5.   Plaintiff Casine Lorenzo is a 41-year-old man, a United States citizen, and at all relevant times a resident of the City of New York, State of New York.

6.   The individually named defendants Detective Miguel Hernandez (Shield # 7220) ("Det. Hernandez"), Sergeant Crystal Collins (Shield # 3435) ("Sgt. Collins"), and Undercover Police Officer C0206 ("UC 206") (collectively, the "individual defendants") are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

7.   On the date of the incident giving rise to this complaint, the individual defendants were assigned to the Narcotics Borough Manhattan North.

8. Each individual defendant is sued in his individual and official capacity. At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

9. Defendant City is a municipality created and authorized under the laws of New York State. It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## STATEMENT OF FACTS

10. On October 23, 2013, around 7:30 AM, Plaintiff attended his methadone maintenance program ("the Program") in a clinic run by Mount Sinai Beth Israel Hospital, at 125th Street and Park Avenue.

11. Plaintiff attends the Program six days a week, between 7 AM and 8 AM, because he is a recovering heroin addict. Plaintiff has consistently attended the Program since 2008 because the Program provides structure, enabling him to function better as a working man and as a husband and father of two daughters.

12. That morning, Plaintiff attended the Program with his troubled friend Steven Malave ("Mr. Malave"), who was experiencing many difficulties, including drug addiction, homelessness, and a destructive romantic relationship.

13. Plaintiff, who has overcome a lifestyle plagued by crime and drug-addiction, tried helping his troubled friend by giving him advice, encouragement, and moral support. Plaintiff felt a brotherly concern for Mr. Malave, and hoped his own example and words of wisdom could inspire Mr. Malave to improve and transform himself. That morning, Plaintiff's hopes would be dashed to pieces.


14. After attending the Program together, Plaintiff and Mr. Malave went to a nearby coffee shop, Andy's Restaurant ("Andy's"), at 2262 3rd Avenue, where they sat and ate a snack.

15. Not having much money, Plaintiff paid for the small meal, but Mr. Malave remained hungry and wanted more food. Although Plaintiff could have eaten in the comfort of his own home, Mr. Malave did not have the same luxury. Wanting to be empathetic and supportive, Plaintiff decided to accompany Mr. Malave to a soup kitchen on 25th Street in Manhattan. Plaintiff had accompanied Mr. Malave twice before to the soup kitchen, which was located inside a church and opened at 10 AM every morning.

16. Upon leaving Andy's, Plaintiff and Mr. Malave walked to 2nd Avenue, where the southbound M15 bus towards South Ferry has frequent stops, including a stop between 122nd and 121st Streets. The bus also stopped at 27th Street, at which point Plaintiff and Mr. Malave would walk to the soup kitchen.

17. As Plaintiff and Mr. Malave walked east across 122nd Street, then turned the corner to go south down 2nd Avenue, numerous individuals were gathered on the sidewalk, standing outside the two delis and the health clinic, all of which were open.

18. As Plaintiff and Mr. Malave turned this corner, Plaintiff had his sights on the bus stop halfway down the block. Unbeknownst to Plaintiff, Mr. Malave had his sights elsewhere, specifically on scoring drugs and getting high.

19. As they passed the individuals standing outside the delis and the health clinic, around 2371 2nd Avenue, Mr. Malave suddenly started saying "Klonopins, Klonopins," as if soliciting the individuals standing on the street.

20. Not quite understanding what Mr. Malave was up to, but sensing that he was trying to hustle or score drugs, Plaintiff screamed at his drug-possessed friend, "What the fuck are you doing! Come on!" Plaintiff stormed ahead toward the bus stop, telling Mr. Malave to follow, but Mr. Malave did not follow Plaintiff.

21. Mr. Malave caught the attention of an undercover officer, UC 206, who was standing among the individuals gathered on the sidewalk. When UC 206 approached Mr. Malave, they engaged in a drug-related transaction, involving the sale of clonazepam pills (a mild sedative) possessed by Mr. Malave.

22. Plaintiff, who was waiting at the bus stop during Mr. Malave and PO Doe's interaction, had nothing to do with this clonazepam transaction.

23. When Plaintiff saw that Mr. Malave was interacting with others outside 2371 2nd Avenue, he yelled at Mr. Malave to come to the bus stop, but Mr. Malave again ignored Plaintiff. Instead of walking south to the bus stop, Mr. Malave started walking north to 122nd Street.

24. Plaintiff pursued Mr. Malave, not knowing where Mr. Malave was going, and not knowing that Mr. Malave had just sold four clonazepam pills to an undercover NYPD officer in a "buy-and-bust" operation, with the "buy" having just happened, and the "bust" just about to happen. Plaintiff passed the two delis on 2nd Avenue and caught up with Mr. Malave as he was about to cross 122nd Street.

25. At that moment, an unmarked police van came to an abrupt halt at the intersection of 122nd Street and 2nd Avenue, where Plaintiff and Mr. Malave were standing. A group of NYPD Narcotics officers in plain clothes, including Det.

5

Hernandez and Sgt. Collins, emerged from the van and rushed at the two men and placed them under arrest, handcuffing them behind their backs, and patting them down.

26. Besides his mere presence with Mr. Malave, Plaintiff had done nothing illegal or suspicious. No contraband or evidence of wrongdoing was found on Plaintiff.

27. Plaintiff was confused about what was happening, but he could discern that Mr. Malave was at fault as Mr. Malave kept muttering, while in handcuffs, "I messed up, I messed up."

28. Not knowing why he was under arrest, Plaintiff asked Det. Hernandez what he had done wrong, to which Det. Hernandez replied, "Ask your friend."

29. Plaintiff was transported to the 25th Precinct ("the Precinct"), 120 East 119th Street, where he was fingerprinted and photographed, and where the individual defendants collectively concocted the fiction that Plaintiff had helped Mr. Malave sell drugs.

30. At the Precinct, Plaintiff was allowed to call his mother to ask her to pick up his cell phone, which he did not want to be vouchered and damaged by the NYPD. When his mother arrived at the Precinct and asked if her son Casine Lorenzo was there, she was told insouciantly: "Your son robbed a bank. Ha, no just kidding. He's hanging out with the wrong people."

31. Also at the Precinct, while inside the holding cell, Plaintiff was forced to strip search. He complied with the humiliating, degrading, loathsome orders. Plaintiff had to remove his pants and underwear, so that his lower body was naked; he had to bend over, so that the defendant detectives could clearly view his backside; and he had to cough, so that the detectives could be assured that no contraband was concealed in his anus.

6

32. Plaintiff's wallet was also taken at the Precinct. The wallet yielded three or four dollars, and contained no evidence of wrongdoing.

33. After a few hours in the Precinct, Plaintiff was transported to Central Booking in Manhattan, and he was eventually arraigned before a Criminal Court Judge, on Docket 2013NY080986.

34. It was only at his arraignment that Plaintiff learned the nature of the felony charges against him: Criminal Possession of a Controlled Substance in the Fifth Degree, in violation of NY Penal Law 220.06(1), and Criminal Sale of a Controlled Substance in the Fifth Degree, in violation of Penal Law 220.31.

35. The felony complaint ("the Complaint") charged Steven Malave and Plaintiff as co-defendants who acted in concert to sell clonazepam on "October 23, 2013 at about 10:40 A.M., in front of 2371 Second Avenue in the County and State of New York." The Complaint was based on the false and deliberately fabricated statements of Det. Hernandez and PO Doe.

36. According to the Complaint, Det. Hernandez was "told by Undercover (UC), shield # C0206 [PO Doe], that the defendants [Plaintiff and Mr. Malave], while acting together, gave UC a controlled substance, specifically clonazepam, in exchange for US currency under the following circumstances: (1) UC observed the defendants walking together and heard Defendant Malave state "Klonopins, Klonopins" as if Defendant Malave was offering them for sale; (2) UC approached Defendant Malave and asked for four; (3) Defendant Casine then interrogated UC by asking various questions as if to ensure that UC was not a police officer; (4) Afterwards, Defendant Malave placed two pills of clonazepam on top of an ice box; (5) UC secured the two pills and asked

Defendant Malave for two additional pills; (6) Defendant Malave then handed UC two additional pills of clonazepam; (7) UC then gave Defendant Malave $10 of pre-recorded-buy-money (PRBM); (8) During the transaction, Defendant Casine stood next to UC and Defendant Malave as if to prevent others from being able to observe the transaction. I recovered $10 PRBM and nineteen additional pills clonazepam from Defendant Malave."

37. Det. Hernandez signed the Complaint on October 23, 2013 at 9:20 PM, under a bold warning: "False statements made in this written instrument are punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law, and as other crimes."

38. The specific fabrications in this complaint are the allegations numbered "(3)" and "(8)" – that Plaintiff "interrogated UC…to ensure that UC was not a police officer" and that Plaintiff "stood…to prevent others from being able to observe the transaction." These two mendacious allegations were added by the individual defendants to distort the truth of Plaintiff's innocent conduct into the fiction of his guilty conduct, and to thereby justify a false arrest.

39. At Plaintiff's arraignment, while the New York County District Attorney requested $50,000 bail against Plaintiff, the Judge released Plaintiff on his own recognizance, and ordered Plaintiff to return to New York County Criminal Court, Part N, on October 29, 2013.

40. During the course of his prosecution, Plaintiff was ordered to return to Court five times – on October 29, 2013, December 18, 2013, February 19, 2014, March 7, 2014, and May 9, 2014. He attended Court on all five dates, spending numerous hours in the criminal courthouse, missing valuable time from his maintenance job.

41. On May 9, 2014, Plaintiff's case was finally dismissed on the motion of the New York County District Attorney, which realized the criminal charges against Plaintiff were baseless.

42. Mr. Malave pled guilty to criminal possession of a controlled substance, and served a one-year jail sentence at Riker's Island.

43. The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

44. There is a systemic failure to identify, discipline, and supervise NYPD officers and detectives who fabricate charges, a failure so widespread, obvious, and tolerated as to constitute a custom and policy of Defendant City.

45. The NYPD's flaccid response to lying officers and detectives – particularly in the context of filing false charges – constitutes an irrational custom and policy that fosters a culture of mendacity in the NYPD.

46. Proportionate and appropriate discipline sends a message to NYPD employees that they are not above the law and are accountable to the people whom they serve. But when it comes to making false statements on court documents, NYPD officers and detectives virtually never face serious discipline.

47. The Civilian Complaint Review Board ("CCRB") has no jurisdiction to investigate allegations of fabricated statements by NYPD officers in criminal court documents. Investigating, controlling, and punishing this type of wrongdoing is the responsibility of the NYPD.

48. The inadequacy of NYPD's supervision and discipline with respect to dishonesty in the filing of criminal charges is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest people and file charges unlawfully, a pressure not tempered by adequate safeguards that ensure citizens are not wrongfully arrested and charged.

49. As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

    a. Violation of his constitutional rights under the Fourth Amendment to the United States Constitution;

    b. Severe emotional trauma, distress, degradation, and suffering;

## SECTION 1983 CLAIMS

## FIRST CLAIM

**Deprivation of Federal Civil Rights Under Section 1983**

50. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

51. All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

52. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

53. The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

54. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

### False Arrest Under Section 1983

55. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

56. By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free of false arrest.

57. As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

58. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## THIRD CLAIM

### Malicious Prosecution Under Section 1983

59. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

60. By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free of malicious prosecution.

61. Without probable cause, the individual defendants directly and actively initiated a criminal proceeding against Plaintiff, creating a fraudulent theory of guilt, providing a mendacious complaint to the D.A..

62. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## FOURTH CLAIM

### Illegal Strip Search Under Section 1983

63. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

64. By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free of unlawful searches of his person.

65. The strip search of Plaintiff – an extreme invasion of privacy and bodily dignity – took place without probable cause to arrest Plaintiff, and without probable cause to believe that a weapon or contraband was secreted in his anus.

66. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged .

## FIFTH CLAIM

### Failure to Intervene Under Section 1983

67. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

68. Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

69. The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

70. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged .

## SIXTH CLAIM

### Municipal Liability Under Section 1983

71. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

72. By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment right to be free of false arrest and malicious prosecution through its failure to train, supervise, and discipline mendacious and malicious officers; and through its fostering a culture of abuse and dishonesty among those who wield considerable power over the lives of everyday citizens.

73. As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged .

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

   a. An order awarding compensatory damages for Plaintiff Casine Lorenzo in an amount to be determined at trial;

   b. An order awarding punitive damages in an amount to be determined at trial;

      c.      A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

      d.      Such other and further relief as this Court may deem appropriate.

DATED:    April 1, 2015               _____/s/_____  
                New York, New York       CYRUS JOUBIN, ESQ.  
                                              88 Pine St., 14th Floor  
                                              New York, NY 10005  
                                              (703) 851-2467  
                                              joubinlaw@gmail.com  
                                              Attorney for Casine Lorenzo